SARAH A. PREBLE & al., *petitioners for certiorari, versus* THE CITY OF PORTLAND.

By the charter of the city of Portland, the city council, composed of the mayor, aldermen and common council, have all the powers to locate, widen, or otherwise alter streets and public ways, which, by the general law, is conferred upon the inhabitants of towns and upon the selectmen.

By section third of the city ordinances, the city council are authorized to refer all applications for the location or alteration of streets to a committee, to inquire into the matter and report. Such committee, for this purpose, represent the city council; and all notices to parties to appear and be heard before such committee are regarded as notices to parties to appear and be heard before the city council, to whom every thing material may be expected to be reported. It is not necessary that parties should have notice to appear and be heard before the city council.

The acceptance by the city council of the report of such committee locating or altering a street, is a sufficient compliance with R. S. (of 1841,) c. 25, § 29.

The location or alteration of a street, and awarding damages to parties injured thereby, is not an act for the appropriation of money; and it is not necessary that such act should be approved by the mayor.

PETITION FOR CERTIORARI, praying that the proceedings of the city council, in making certain alterations in Temple street, in the city of Portland, might be quashed. The facts are nearly all stated in the opinion of the Court. Several

errors were assigned, some of which were not relied upon in the argument.

The petitioners claimed title to the premises taken in the alteration of the street, as devisees in the will of the late W. P. Preble, deceased; and their title was admitted.

The petition for the alteration of Temple street was presented to the city council, July 2, 1856, and was referred to the committee on laying out new streets. On the 8th of July, that committee reported, recommending the alteration of the street, and submitting an order " that said committee be authorized and directed to alter said street," according to certain specifications therein contained. After amending the specifications, in some particulars, the order was passed July 9th.

The committee thereupon, July 10th, posted notices of the intention of the city council to alter the street, and appointing a place for the hearing of parties interested, July 18th. These were all the notices that were ever given. After hearing the parties on the day appointed, the committee made their report, altering the street according to the specifications contained in the order; and this alteration, with the admeasurements and boundaries, was filed in the city clerk's office, July 24th. The subject was brought before the city council on July 31, with no final action. On the 4th of August, a remonstrance against the alteration, from W. P. Preble, was presented to the city council, and referred to the committee on new streets. And, on the 5th of August, the report of the committee, making the alteration and fixing the amount of damages to be paid to the parties injured thereby, was adopted by both branches of the city council.

*Barnes*, for the petitioners:—

Contended that the proceedings of the city council were not such as the law required, and that they ought to be quashed.

1. Certiorari lies against the corporation, and their proceedings in locating or altering a street, if invalid, may be quashed by this Court. *Parks* v. *Boston*, 8 Pick. 218; *Stone*

v. *Boston*, 2 Met. 220; *Baldwin* v. *Bangor*, 36 Maine, 518; *Dwight* v. *Springfield*, 4 Gray, 107.

2. The devisees, though one holds only a life estate, and the other the remainder, are entitled to maintain this process.

3. By the R. S. of 1841, §§ 27, 28, 29, before any proceedings for the location or alteration of a street or way, the selectmen must give notice of their intention to make such alteration, that parties interested may appear and be heard. If, upon such hearing, they determine to make such alteration or location, *another notice* must be given by issuing a warrant for a town meeting, stating the admeasurements and boundaries of the location, which is not established until accepted and allowed by the inhabitants at such meeting.

The same proceedings, *mutatis mutandis*, must be had before the city council. In this case, *before* passing an order " authorizing and *directing*" their committee to make the alteration in the street, they should have given notice of their intention to do so, that parties might appear and be heard before them. This was not done. No notice was ever given, nor any opportunity offered for interested parties to appear before the city council. And no notice was given for any hearing before the committee, until after the city council had *directed* the committee to make the alteration. Nor were there afterwards any proceedings by the city council analogous to the acceptance of the alteration, by a meeting of the inhabitants of a town duly notified of the admeasurements and boundaries of such alteration.

4. By a provision of the city charter, special laws of 1833, chapter 325, no bill or act passed by the city council for the appropriation of money is of any validity, unless approved by the mayor. By this alteration, as reported by the committee, damages were " awarded " to various persons injured thereby, to the amount of $6693. This act was never approved by the mayor, and the whole proceeding was therefore void.

The case was argued by —

*Fox*, for the respondents.

The opinion of the Court was drawn up by

TENNEY, C. J. — The records of the city council are represented by the petitioners, as showing that the petition of Eliphalet Greeley and others, praying that Temple street might be widened, was referred to " the committee on laying out new streets." On July 8, 1856, after this reference, the committee made a report recommending that the street be altered, according to an order which they submitted with the report. After several unsuccessful attempts of the two boards of the city council to agree upon the particular alterations to be made in that street, the report of conferees, who had been appointed by a concurrent vote of the boards, was accepted by both on July 9, 1856. Thereupon, on the same day, the city council authorized and directed the committee to alter Temple street, by widening the same, and in their order for this purpose prescribed the lines and bounds specifically, as the limits of the street after the alteration. On July 10, 1856, the committee duly posted notices of the intention of the city council to widen Temple street, by the lines and bounds prescribed in the order last passed, stating therein the *termini* of the street, and also the particular alterations contemplated, on the 18th day of said July, at the corner of Temple and Middle streets, and that all persons interested would take notice and govern themselves accordingly.

On July 24, 1856, the committee made their report to the city council, therein stating that, having examined the route proposed, they were of the opinion, and did adjudge, that there was occasion and necessity for an alteration of said public way, for the use and convenience of the city, and they altered said street in the manner therein described, conforming to the order of the city council, and that they filed the alteration with the city clerk with the boundaries and admeasurements mentioned in the report. By the clerk's certificate, the report of the committee was filed in his office on July 24, 1856.

Several errors are alleged in the petition to be exhibited

by the records.   We are to see whether legal error has been shown to be in the record.

The first errors assigned and relied upon are, that the city council, without giving notice, directed the committee "on laying out new streets," to alter Temple street in the particular manner followed afterwards by the committee, thereby subjecting their land to a servitude, without giving the owner thereof an opportunity to be heard upon that question before the judgment of the city council was fully formed.

By the charter of the city of Portland, section 4, the executive power of said city generally, and the administration of police, with all the powers of the selectmen of the town of Portland, except as provided in the thirteenth section of the Act, shall be vested in the mayor and aldermen, &c.   All other powers now vested in the inhabitants of said town, and all powers granted by the Act, shall be vested in the mayor and aldermen and common council of said city, to be exercised by concurrent vote, each board to have a negative upon the other.   These boards constitute and are called the city council.   § 2.

By section 6, the city council shall have exclusive authority and power to lay out any new street or public way, or widen or otherwise alter any street or public way in said city of Portland; and to estimate the damages any individual may sustain thereby; and shall in all other respects be governed by, and subject to the same rules and restrictions as are provided in the laws of this State regulating the laying out and repairing streets and public highways.

Section 3 of the city ordinances provides, that the committee "on laying out new streets," when thereto directed by a vote of the city council, shall lay out, widen or otherwise alter any street or public way, and estimate the damage any individual may sustain thereby, and they shall report to the city council the laying out or alteration of such street or way, with the boundaries and admeasurements thereof, together with the names of the persons to whom damages have been assessed therefor.

No question is made, that the alteration attempted to be made in Temple street would have fallen under Art. II, of R. S. of 1841, if Portland had remained a town; which article treats "of location, alteration and discontinuance of town and private ways." By these R. S. c. 25, § 27, the selectmen of the several towns, either personally or by such person or persons as they may appoint, may lay out, alter or widen town ways, for the use of their respective towns, &c.

Section 28 provides, that no such town way shall be laid out or altered, unless seven days previous thereto a written notice of the intention of the selectmen of the town to lay out and alter the same, and stating the *termini* of such road, shall be posted up, &c.

By section 29, no such town or private way shall be established, as laid out or altered, &c., until the same, &c., shall have been reported to the town and accepted and allowed at some meeting of the inhabitants, regularly warned and notified therefor; nor unless such laying out or alteration, &c., shall have been filed with the town clerk seven days at least before such meeting.

From the terms used in section 28, the notices required to be posted up are so to be posted after the selectmen have so far deliberated upon the subject that they have intended to lay out or alter the road which may have been in contemplation. In coming to this stage of their proceedings, no notices to be given are referred to in the statute; and none can be presumed to have been designed, as express provision is made that the notices shall be posted up before the laying out, &c. This intention of the selectmen must be entertained upon some consideration and consultation among the members of the board. The statute does not forbid any informal examination by them of the route, between the *termini* of the way, which it is supposed may be laid out or altered. And if they should proceed so far as to trace out the lines of the road to be laid out or altered, and commit these doings to writing, without the design of making such memorandum the report of the laying out or alteration of the

way, required by the statute to be made and filed with the town clerk, we see nothing in the statute which treats this as so improper, that the subsequent action, according to the provisions of law, are to be held as destitute of authority. The examination of the subject of the way, and the consultation thereon, and the memorandum made as supposed, may together satisfy them what may be proper, in relation to the laying out or altering the road, but still they are not supposed to be thereby disqualified to hear impartially those who may appear before them to be heard upon the subject.

The city council having the power, under the charter, which the selectmen and inhabitants of the town possessed before, it certainly is proper, and believed to be in harmony with the general practice, to refer an application for the laying out or the alteration of a street to the committee " on laying out new streets," (a committee provided for in section 2, of city ordinances,) in order that they may examine the subject matter of the application and collect all the facts appertaining thereto. The reference is made that, through their report and otherwise, the expediency of granting the prayer of the petition may be understood by the city council. And if, from the knowledge thus acquired, the committee report in favor of further action, it is not improper that they should recommend the particular manner in which the laying out or alteration should be made. This certainly the city council might reasonably expect, that they might know fully what it was proposed by the committee should be done, and the attendant expense to be incurred, as the statute interposes no prohibition of such a course. This course is not unlike the examination and consultation referred to, of the selectmen of a town, previous to their giving the notices of their intention to act in the premises; but obviously more proper, as the committee are supposed to have acquired knowledge which the city council have not.

In this case, neither the city council nor their committee had altered Temple street previous to the order to the latter of July 9, 1856; and, before any proceedings took place under

this order, all parties had been legally notified of the time and place where they could be heard before the committee. The notice to appear before the committee is to be regarded as a notice to be heard before the city council, to whom every thing material may be expected to be reported. *Harlow* v. *Pike*, 3 Greenl. 438.

Although the committee were instructed, after they had first reported, to make certain specific alterations, all the opportunity for a full hearing was afforded, which any one could claim as a right. And the alterations made by the committee, under direction of the city council, were by no means conclusive. When the committee made their report, after the opportunity for persons interested to be heard, the way had not been altered in the sense of the statute, and the copies of the record presented show that it was not so regarded. Votes of one board were not concurred in by the other. Some of these votes were in favor of a recommitment to the committee, with instructions to make specific alterations in lines and boundaries. And, when the matter was thus pending before the city council, the lines of the street, as increased in width by the committee, as directed by the boards, were not supposed by them, nor were they, in fact, determined in any respect, but they served as a basis for propositions of amendment. But the right of all persons had then been respected, and provided for; and if any one had presented himself and objected to the alteration made by the committee, he could have been heard, and the grounds of the objection, the committee would have, in some manner, made known to the city council.

The report of this committee was, of necessity, unlike that of the selectmen of the town. That of the latter is the report of the board authorized and required to lay out or alter the way, and when made and filed their power ceased. The former was merely the report of a committee of the city council, who alone had the authority to finally lay out or alter the way.

This case, in this particular, is unlike that where the select-

men lay out a public way in a town, under the direction of the town, as in the case of *Keen* v. *Stetson*, 5 Pick. 492. In that case, the selectmen, who were an independent board and bound to act in the first instance, in order that a town way might be legally established, and lay out the way, in the exercise of their own judgment and sound discretion, if they laid it out at all, acted as the servants of the town, ministerially, in furthering the designs of the town, without exercising their own authority, and their doings in no respect differed from the acts of any other three men whom the town might have employed for the same purpose.

We are not satisfied that the proceedings of the city council, as represented upon the records, in reference to the alteration of Temple street, were erroneous.

Another error assigned is, that a time should be fixed when the city council should act upon the report, which was not done in this instance. This objection to the record does not seem to be relied upon in argument; but it may not be improper to remark that the city council take the place of the inhabitants of the towns, as well as of the selectmen; and that a meeting of the city council took place on July 31, 1856, when the matter of the alteration of Temple street was brought up and discussed, which, we cannot doubt, was a compliance with the statute.

The record discloses no error in relation to the remonstrance of Judge Preble. It was received, read and referred to the committee " on laying out new streets," who, we are to suppose, considered the same and made known their views to the city council, which were not required to be made matter of record, and the original report was finally accepted.

It does not appear that any law, ordinance, or bill, for the appropriation of money, had passed both branches of the city council, having connection with the alteration of Temple street, and, consequently, none could have been presented to the mayor for his approval. No foundation, in fact, is perceived for this objection.

The report of the committee " on laying out new streets,"

having been accepted on July 31, 1856, is to be regarded as "accepted and allowed," within the meaning of R. S., c. 25, § 29.  *Mann* v. *Marston*, 3 Fair. 32.

Other errors in the record were assigned, which the petitioner's counsel have not urged as having a sufficient basis to require the writ prayed for, and we do not perceive that they constitute any legal defect.                    *Writ denied.*

HATHAWAY, MAY, GOODENOW, and DAVIS, J. J., concurred.